**Benesch, Friedlander, Coplan & Aronoff LLP**
Daniel N. Brogan (NJ No. 042592012)
Noelle B. Torrice (NJ No. 079132013)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
dbrogan@beneschlaw.com
ntorrice@beneschlaw.com

Margo Wolf O'Donnell (admitted *pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Facsimile: 312.767.9192
modonnell@beneschlaw.com

-and-

Jordan J. Call (admitted *pro hac vice*)
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
jcall@beneschlaw.com

*Attorneys for Defendant Global Equipment
Company, Inc. d/b/a Global Industrial*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA LYNCH, | ) Case No. 3:24-cv-07735-RK-JBD |
| | ) |
| *Plaintiff,* | ) **DEFENDANT GLOBAL EQUIPMENT** |
| | ) **COMPANY, INC. D/B/A GLOBAL** |
| v. | ) **INDUSTRIAL'S ANSWER AND** |
| | ) **AFFIRMATIVE DEFENSES TO** |
| | ) **PLAINTIFF LISA LYNCH'S SECOND** |
| GLOBAL EQUIPMENT COMPANY, | ) **AMENDED CIVIL ACTION** |
| INC., d/b/a GLOBAL INDUSTRIAL. | ) **COMPLAINT** |
| | ) |
| *Defendant.* | ) *DEMAND FOR JURY TRIAL ENDORSED* |
| | ) *HEREON* |
| | ) |

Defendant Global Equipment Company, Inc. d/b/a Global Industrial ("Global Industrial"), by and through its undersigned counsel, and for its Answer and Affirmative Defenses to Plaintiff, Lisa Lynch's ("Plaintiff") Second Amended Civil Action Complaint (the "Complaint"), states as follows:

## I.   Introduction

1.     Plaintiff has initiated this action to redress violations by Global Equipment Company, Inc., d/b/a Global Industrial (hereinafter referred to as "Defendant") of the New Jersey Law Against Discrimination ("NJ LAD" – N.J.S.A. §§ 10:5-1 et. seq.) and the Americans with Disabilities Act, as amended ("ADA"- 42 U.S.C. 12101, et. seq). Plaintiff asserts herein inter alia that she was unlawfully terminated from her employment for discriminatory and retaliatory reasons.

**ANSWER:** Global Industrial admits that Plaintiff has brought an action alleging claims under the New Jersey Law Against Discrimination ("NJLAD") and the Americans with Disabilities Act ("ADA"). Global Industrial denies the remaining allegations contained in Paragraph 1 of the Complaint.

## II.   Parties

2.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

**ANSWER:**   Global Industrial incorporates and reasserts its responses to the foregoing paragraphs as if fully rewritten herein.

3.     Plaintiff is an adult who resides at the above-captioned address. Plaintiff is a resident, domiciliary and citizen of Pennsylvania.

**ANSWER:**   Global Industrial admits the allegations contained in Paragraph 3 of the Complaint.

4.      Defendant is incorporated and headquartered in New York at the above-captioned address. Defendant, a resident, domiciliary, and citizen of New York, sells and distributes a wide range of industrial and maintenance, repair, and operations products to customers across North America.

**ANSWER:**   Global Industrial admits the allegations contained in Paragraph 4 of the Complaint.

5.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**ANSWER:**   Paragraph 5 of the Complaint contains legal conclusions for which no response is required. To the extent Paragraph 5 of the Complaint contains allegations for which a response is required, Global Industrial denies the allegations contained in Paragraph 5 of the Complaint.

### III.   Factual Background

6.      The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

 **ANSWER:**   Global Industrial incorporates and reasserts its responses to the foregoing paragraphs as if fully rewritten herein.

7.      Plaintiff was hired by Defendant effective on or about October 24, 2016; and in total, Plaintiff was employed by Defendant for approximately 7.5 years (until termination effective in May of 2024).

**ANSWER:**   Global Industrial admits the allegations contained in Paragraph 7 of the Complaint.

8.      Plaintiff was deemed to work for Defendant from its office(s) at 24 Applegate Drive, Robbinsville, NJ 08691 (in Mercer County New Jersey). Plaintiff was at all relevant times deemed reporting from and based within Defendant's aforesaid Robbinsville, NJ location.

**ANSWER:**   Global Industrial denies the allegations contained in Paragraph 8 of the Complaint.

9.      From the time of Plaintiff's hire in 2016 until the beginning of the COVID-19 pandemic in or about March of 2020, Plaintiff worked in-office at the Robbinsville, NJ office location every day.

**ANSWER:**   Global Industrial admits that Plaintiff was expected to work most workdays from Robbinsville, New Jersey office from the commencement of her employment until the start of the COVID-19 pandemic in March 2020. Global Industrial denies the remaining allegations contained in Paragraph 9 of the Complaint.

10.      Plaintiff, like many other employees, then began to work exclusively from home throughout the course of the pandemic (from approximately March of 2020 until early 2023). This period overlapped with the onset of Plaintiff's medical conditions and treatment, discussed *infra*.

**ANSWER:**   Global Industrial admits that, on account of the COVID-19 pandemic, Plaintiff and other employees worked from home for periods of time from approximately March 2020 through early 2023.  Global Industrial is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 10 of the Complaint, and therefore Global Industrial denies the same.

11.      Plaintiff worked for Defendant in the role(s) of sales, and as of termination was referred to by Defendant as working in sales, as a sales manager, or as a strategic account manager (as there was some variation in reference to Plaintiff's role(s) over time during her tenure).

4

**ANSWER:**   Global Industrial admits the allegations contained in Paragraph 11 of the Complaint.

12.     During Plaintiff's last approximately 3 months of employment (pre-termination), she was directly supervised by Keith Fitzgerald ("Fitzgerald"). Fitzgerald began working for Defendant in or about February of 2024, is based in Ohio, and has been employed by Defendant as a Director of Strategic Accounts. Fitzgerald has been (and was) supervised by Evelyn Davis ("Davis"), based in Georgia, a Vice President of Sales for Defendant.

**ANSWER:**    Global Industrial admits the allegations contained in Paragraph 12 of the Complaint.

13.     Since in or about 2020, Plaintiff had been diagnosed with cancer (and related medical complications). Some of Plaintiff's medical complications from 2020 to the present include (but are not limited to):

- An inoperable tumor.

- Lack of a salivary gland (due to radiation treatment).

- Neuropathy in all four (4) of her limbs.

- Bowel and urinary complications (primarily resulting from medication side effects).

- Immune system limitations and impacts.

- Hearing loss.

- Thyroid problems.

5

**ANSWER:**    Global Industrial is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint, and therefore Global Industrial denies the same.

14.    Plaintiff's health condition(s) examples mentioned *supra* are not intended to be all-inclusive, but rather, examples. Due to a lack of a salivary gland, Plaintiff's ability to talk at times, chew, swallow, and communicate can be impacted (as her throat and mouth get extremely dry and she accumulates extensive mucus). Due to neuropathy, Plaintiff at times has difficulty performing certain manual tasks, gets sudden muscle weaknesses, and she gets extreme numbness or discomfort in her limbs. Due to her inoperable tumor, Plaintiff gets facial pain, nosebleeds, headaches, and other symptoms. Again, this is intended to be nothing more than a generalized outline of Plaintiff's unfortunate (permanent) health situation.

**ANSWER:**    Global Industrial is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 of the Complaint, and therefore Global Industrial denies the same.

15.    From 2020 through the present, Plaintiff has treated through radiation, extensive medication, days off from work as medically necessary, diagnostics, continued medical appointments, and therapy. And in particular, Plaintiff had established a home work environment that enabled her to perform all essential functions of her job(s) and to work in an exemplary manner while in the employ of Defendant.

**ANSWER:**    Global Industrial admits that Plaintiff had worked from home for periods of time during her employment with Global Industrial. Global Industrial denies that Plaintiff performed all essential functions of her job at all times during her employment with Global Industrial. Global Industrial denies that Plaintiff worked in an exemplary manner at all times

during her employment with Global Industrial. Global Industrial is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 15 of the Complaint, and therefore Global Industrial denies the same.

16.     Prior to Fitzgerald's hire, Plaintiff had for years: (a) received praise; (b) received good evaluations; and (c) obtained very good metrics related to objective performance for sales goals. She was a very good employee overall, and Plaintiff could not possibly be criticized from any objective performance standards (inclusive of sales).

**ANSWER:**   Global Industrial denies the allegations contained in Paragraph 16 of the Complaint.

17.     As a Strategic Account Manager (a/k/a "SAM"), Plaintiff had at any given time at or around seven (7) employees who reported to her. Four (4) of them worked remotely, and three (3) of them worked either from a New York office or Plaintiff's assigned New Jersey office. To be clear, Plaintiff was able to perform 100% of her role remotely without issue (as she often worked remotely). And there were certainly no problems with her being managed remotely by her immediate NY manager (a Director) or her GA indirect manager (a Vice President). Indeed, as mentioned above, more than 50% of Plaintiff's own team consistently worked remotely.

**ANSWER:**   Global Industrial admits that Plaintiff was expected to supervise approximately seven employees, and many of them worked outside of New Jersey. Global Industrial admits that Plaintiff's supervisors managed her remotely. Global Industrial denies the remaining allegations contained in Paragraph 17 of the Complaint.

18.     For at least two (2) years, Plaintiff worked 100% remotely (from 2021 – 2023) during the COVID pandemic and thereafter. Plaintiff performed her role exceptionally for years on a 100% remote basis.

**ANSWER:**     Global Industrial admits that Plaintiff worked 100% remotely for periods of time as a result of the COVID-19 pandemic. Global Industrial denies the remaining allegations contained in Paragraph 18 of the Complaint.

19.     In early 2023, Plaintiff's management expressed a (generalized) preference that Plaintiff have some presence in the physical office(s) at times. From early 2023 through late 2023, Plaintiff went into work in-person twice a week (on Tuesdays and Thursdays) to establish a regular presence as requested, against her doctor's orders.

**ANSWER:**     Global Industrial admits that Global Industrial implemented a return-to-office plan after the COVID-19 pandemic subsided. Global Industrial denies the remaining allegations contained in Paragraph 19 of the Complaint.

20.     During this time, Plaintiff oversaw three (3) employees in the New Jersey office out of which she was based, none of whom worked in the office. She additionally supervised four (4) New York employees and was required to work at the New York office approximately once a month.

**ANSWER:**     Global Industrial admits that Plaintiff was expected to oversee approximately seven employees, and many of them worked outside of New Jersey. Global Industrial admits that Plaintiff periodically worked in-person in Global Industrial's New York office. Global Industrial denies the remaining allegations contained in Paragraph 20 of the Complaint.

21.     Other than New Jersey and occasionally New York, Plaintiff did not work in any other in-office location for Defendant.

**ANSWER:**     Global Industrial admits the allegations contained in Paragraph 21 of the Complaint.

22.     By in or about the January of 2024 timeframe, Defendant's management was expressing a preference that Plaintiff start coming to the office(s) four (4) days per week and to work remotely one (1) day per week. There was no work-related justification relayed other than, as stated above, a companywide preference of more work from office locations for many of Defendant's team members.

**ANSWER:**   Global Industrial admits that Global Industrial gradually implemented a return-to-office plan as the COVID-19 pandemic ended. Global Industrial admits that it counseled Plaintiff on her lack of accessibility and responsiveness while working remotely. Global Industrial denies the remaining allegations contained in Paragraph 22 of the Complaint.

23.     Pre-pandemic, Plaintiff didn't mind and had no qualm whatsoever with working 40-hour, 50-hour, or 60-hour workweeks in-person from Defendant's physical premises (in New Jersey). However, as explained *supra*, by 2021 Plaintiff had undergone more than 30 weeks of chemo therapy and would for years to come (and into the indefinite future) endure serious health problems and side effects of her conditions and medical treatment / medications.

**ANSWER:**   Global Industrial is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 of the Complaint, and therefore Global Industrial denies the same.

24.     Between January 2024 – May 2024, Plaintiff was seeking medical accommodations to work five (5) days per week remotely. Plaintiff offered as part of the accommodation request to still perform any necessary travel, to attend any trade shows, and to come to the office for any necessary meetings.

**ANSWER:**   Global Industrial admits that, at various points from November 2023 to February 2024, Plaintiff requested an arrangement to work from her home in Pennsylvania on each

workday of each workweek. Global Industrial denies the remaining allegations contained in Paragraph 24 of the Complaint.

25.     In addition to her own management, Plaintiff was discussing medical accommodations in the January 2024 – May 2024 timeframe with Stacy Robinson ("Robinson"). Robinson has (and remains) a Director of Benefits for Defendant.

**ANSWER:**    Global Industrial admits that Stacy Robinson is employed by Global Industrial as a Director of Corporate Benefits. Global Industrial denies the remaining allegations contained in Paragraph 25 of the Complaint.

26.     Between February 2024 – May of 2024, Plaintiff was also discussing her health problems, accommodation requests, and medical needs with Fitzgerald. Plaintiff informed Fitzgerald of her health background, cancer history, and why she was seeking medical accommodations to work remotely. Fitzgerald would share with Plaintiff (in response) that he is being kept apprised of Plaintiff's health discussions and accommodation dialogue by human resources.

**ANSWER:**    Global Industrial admits that Plaintiff informed Fitzgerald of her health background. Global Industrial admits that Global Industrial's human resources department apprised Keith Fitzgerald of Plaintiff's work arrangements. Global Industrial denies the remaining allegations contained in Paragraph 26 of the Complaint.

27.     There were extensive discussions between January 2024 – May 2024 about Plaintiff's health and her requested accommodations. Initially, Defendant was only willing to accommodate Plaintiff by permitting her to come to the office 3 days per week instead of 2 days per week (with the balance allowing remote work). Then, after escalation by Plaintiff and an

internal appeal process, Plaintiff was finally granted the ability to work from the office 2 days per week and 3 days per week remotely (via telecommuting).

**ANSWER:**   Global Industrial admits that, in January 2024, it initially proposed to Plaintiff an arrangement of 3 days in-office and 2 days from home during each workweek for Plaintiff. Global Industrial admits that, in February 2024, it ultimately granted to Plaintiff an arrangement of 2 days in-office and 3 days from home during each workweek for Plaintiff. Global Industrial denies the remaining allegations contained in Paragraph 27 of the Complaint.

28.     Toward the end of her employment, Plaintiff was in fact going to work 2 days per week at Defendant's Robbinsville, New Jersey office location and working remotely 3 days per week. But Fitzgerald was very discriminatory towards Plaintiff during his several months of supervising her. By way of examples only, he:

- Seemed very annoyed with Plaintiff when she discussed her health or accommodation needs (in all aspects of his gestures and tone of voice).

- Told Plaintiff "I am trying not to jump to any conclusions about you in light of your health," but expressing Plaintiff didn't seem committed to her job (at which time Plaintiff politely and diplomatically opposed such claimed perceptions).

- Told Plaintiff iterations of comments such as her "heart doesn't seem to be in it" as to the job with no factual or work basis to make such assertions (other than likely perceptions of her health or requests for medical reasons to telecommute).

- Told Plaintiff iterations of comments at varying times that she is not present enough as a manager in his view (in reference to being in the office as much as he desired). This was absurd and discriminatory, as: (a) Plaintiff performed her job exceptionally

regardless of physical location; and (b) Fitzgerald knew Plaintiff was either seeking or approved for medical accommodations (as of such comments).

- Told Plaintiff he was getting feedback from Plaintiff's team that they complained she wasn't present enough. Plaintiff asked her team, and they: (a) explained Plaintiff provided plenty of support; (b) was present enough; and (c) that they didn't lodge any complaints with Fitzgerald.

**ANSWER:** Global Industrial admits that Plaintiff was counseled on her lack of accessibility (both remotely and in-office), responsiveness (both remotely and in-office), and commitment to her duties (both remotely and in-office). Global Industrial admits that Plaintiff inappropriately pressured her subordinates to provide positive feedback as to her accessibility and responsiveness. Global Industrial denies the remaining allegations contained in Paragraph 28 of the Complaint.

29.     Effective on or about May 17, 2024, Plaintiff was terminated by Defendant in a discussion with human resources management and Fitzgerald. Therein, Plaintiff was informed by Fitzgerald she lacked enough of a presence, lacked availability, she didn't seem committed to the job, and he believed she was looking for a new job anyway. None of this was true; and if anything, such perceptions serve as evidence of a discriminatory view of Plaintiff (and her perceived lack of commitment due to accommodation requests or needs).

**ANSWER:** Global Industrial admits that it terminated Plaintiff's employment on May 17, 2024. Global Industrial admits that it terminated Plaintiff's employment on account of her lack of a presence (both remotely and in-office), lack of availability (both remotely and in-office), lack of commitment (both remotely and in-office), and Plaintiff's statements that she had been spending

her time searching for new employment. Global Industrial denies the remaining allegations contained in Paragraph 29 of the Complaint.

30.     As of May 2024, Plaintiff was still based out of Defendant's Robbinsville, NJ location and worked in that office location at least two days per week.

**ANSWER:**     Global Industrial admits that, in May 2024, Plaintiff generally was expected to work 3 days from her home in Pennsylvania and 2 days in office at Global Industrial's Robbinsville, New Jersey facility during each workweek. Global Industrial denies the remaining allegations contained in Paragraph 30 of the Complaint.

31.     In approximately 7.5 years, Plaintiff was never issued any documented: (a) counseling; (b) discipline; or (c) any type of performance improvement plan.

**ANSWER:**     Global Industrial denies the allegations contained in Paragraph 31 of the Complaint.

32.     Plaintiff was not only excellent at her job, but she also had experience and qualifications to work in a much more elevated role (as she had been in prior years transitioned to her final role due to a stated restructuring from working in a higher-level management capacity for Defendant). Hence, Defendant's need to manufacture totally subjective assertions to serve as a (pretextual) basis for Plaintiff's termination from employment.

**ANSWER:**     Global Industrial denies the allegations contained in Paragraph 32 of the Complaint.

33.     Despite being terminated for alleged performance-based reason(s), Plaintiff was offered a substantial severance package in conjunction with her termination from employment if she agreed to legally waive all "discrimination" and "retaliation" claims against Defendant. Employees terminated for performance-related or cause-based reasons are not entitled to any

severance within Defendant. This is well-established, admissible evidence of discrimination, pretext or retaliation.

**ANSWER:**   Global Industrial admits that it offered Plaintiff a severance agreement that contained a general release of claims. Global Industrial further admits that, as a general matter, no employee is entitled to severance unless the employee executes an agreement containing a general release of claims. Global Industrial denies the remaining allegations contained in Paragraph 33 of the Complaint, including the allegations found in the footnote to Paragraph 33 of the Complaint.

34.   There is simply no question Plaintiff was discriminatorily and retaliatorily terminated by Defendant (for pretextual reasons). With all compensation components and benefit valuation(s), Plaintiff lost compensation paying her in excess of $175,000.00 per annum, suffered significant emotional distress, and believes Defendant's malice in terminating her warrants punitive damages.

**ANSWER:**   Global Industrial denies the allegations contained in Paragraph 34 of the Complaint.

35.   Following Plaintiff's termination from employment, Defendant sought (and advertised for) a Strategic Account Sales Manager to backfill Plaintiff's (unlawful) termination from employment.

**ANSWER:**   Global Industrial admits that it sought to hire a Strategic Account Sales Manager following the termination of Plaintiff's employment with Global Industrial. Global Industrial denies the remaining allegations contained in Paragraph 35 of the Complaint.

**Count I**
**Violations of the New Jersey Law Against Discrimination**
**("NJLAD") (Discrimination & Retaliation)**

36.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

**ANSWER:**   Global Industrial incorporates and reasserts its responses to the foregoing paragraphs as if fully rewritten herein.

37.     Plaintiff was terminated because: (a) of her actual or perceive disabilities; (b) her requested accommodations (intermittent days for appointments and remote working conditions; and (c) her opposition to Fitzgerald's discriminatory treatment of her.

**ANSWER:**   Global Industrial denies the allegations contained in Paragraph 37 of the Complaint.

38.     Plaintiff was also not medically accommodated as: (a) she could have easily been permitted to work remotely more than 3 days per week; and (b) as a result of nonaccommodation, Defendant unnecessarily caused Plaintiff additional pain and discomfort related to her ongoing health problems. Plaintiff was denied reasonable accommodations she sought.

**ANSWER**:   Global Industrial denies the allegations contained in Paragraph 38 of the Complaint.

39.     Defendant's actions as outlined in this lawsuit constitute both discrimination and retaliation in violation of the NJ LAD.

**ANSWER**:   Global Industrial denies the allegations contained in Paragraph 39 of the Complaint.

**Count II**
**Violations of the Americans with Disabilities Act, as Amended**
**(Discrimination & Retaliation)**

40.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

**ANSWER:**   Global Industrial incorporates and reasserts its responses to the foregoing paragraphs as if fully rewritten herein.

41.   Plaintiff exhausted her administrative remedies under the ADA by timely filing a Charge of Discrimination with the EEOC and being issued a right-to-sue letter.

**ANSWER**:   Paragraph 41 of the Complaint contains legal conclusions for which no response is required. To the extent Paragraph 41 of the Complaint contains allegations for which a response is required, Global Industrial denies the allegations contained in Paragraph 41 of the Complaint.

42.   The foregoing conduct also constitutes violations of the ADA, as amended.

**ANSWER:**   Global Industrial denies the allegations contained in Paragraph 42 of the Complaint.

## OTHER

43.   In response to Plaintiff's "WHEREFORE" section, Global Industrial denies that Plaintiff is entitled to any of the relief requested therein or any other relief whatsoever.

44.   Any allegation not hereinbefore expressly admitted, qualified, or denies is hereby denied by Global Industrial.

## AFFIRMATIVE AND OTHER DEFENSES

1.   Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.   Plaintiff's Complaint is barred, in whole or in part, by the applicable statutes of limitations.

3.   Plaintiff's Complaint is barred, in whole or in part, by Plaintiff's failure to properly exhaust administrative remedies for some or all of the claims in Plaintiff's Complaint.

4.      Plaintiff's Complaint is barred, in whole or in part, because Plaintiff was employed by Global Industrial on an at-will basis.

5.      Plaintiff's Complaint is barred, in whole or in part, because all conduct and actions on the part of Global Industrial concerning Plaintiff were wholly legitimate, non-discriminatory, non-retaliatory, and non-pretextual.

6.      Plaintiff's Complaint is barred, in whole or in part, by Plaintiff's failure to communicate a request for a reasonable accommodation.

7.      Plaintiff's Complaint is barred, in whole or in part, by the absence of a qualifying disability.

8.      Plaintiff's Complaint is barred, in whole or in part, by the absence of any failure by Global Industrial to provide a reasonable accommodation.

9.      Plaintiff's Complaint is barred, in whole or in part, by the absence of any failure by Global Industrial to engage in an interactive process.

10.     Plaintiff's Complaint is barred, in whole or in part, because the requested accommodation would have imposed an undue hardship.

11.     Plaintiff's Complaint is barred, in whole or in part, by the absence of any protected conduct on the part of Plaintiff.

12.     Plaintiff's Complaint is barred, in whole or in part, because Plaintiff is not entitled to invoke the New Jersey Law Against Discrimination.

13.     Plaintiff's Complaint is barred, in whole or in part, by the doctrines of laches, waiver, estoppel, or consent.

14.     Plaintiff's Complaint is barred, in whole or in part, by the doctrine of unclean hands.

15.     Plaintiff's claimed damages are limited by the absence of cognizable damages.

16.     Plaintiff's claimed monetary damages are barred or limited by Plaintiff's failure to reasonably mitigate damages.

17.     Any claim for punitive damages is barred because the alleged acts or omissions of Global Industrial do not rise to the level required to sustain an award of punitive damages, do not evidence malicious, reckless, or fraudulent intent to deny Plaintiff her rights, were not so wanton or willful to support an award of punitive damages, and do not otherwise entitle Plaintiff to punitive damages.

18.     Global Industrial reserves the right to assert any and all other defense which discovery hereafter may reveal to be appropriate. Global Industrial further reserves the right to amend this Answer and/or its Affirmative Defenses accordingly.

WHEREFORE, Global Industrial respectfully requests that the Court dismiss Plaintiff's Complaint, with prejudice, with all costs to be borne by Plaintiff, and to award Global Industrial its costs and expenses, including its attorneys' fees, together with any other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant Fed. R. Civ. P. 38(b) and D.N.J. L.R. 38.1, Global Industrial hereby demands a trial by jury with the maximum number of jurors permitted by law on all issues so triable.

Dated:  August 29, 2024

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Noelle Torrice*
Daniel N. Brogan (NJ No. 042592012)
Noelle B. Torrice (NJ No. 079132013)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
dbrogan@beneschlaw.com
ntorrice@beneschlaw.com

Margo Wolf O'Donnell (admitted *pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Facsimile: 312.767.9192
modonnell@beneschlaw.com

-and-

Jordan J. Call (admitted *pro hac vice*)
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
jcall@beneschlaw.com

*Attorneys for Defendant Global Equipment Company, Inc. d/b/a Global Industrial*